**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| ———————————————— : | |
| RONNA LITVAK, : | |
|                PLAINTIFF, : | Docket No.: |
| : | |
| v. : | |
| : | |
| ADT LLC d/b/a ADT SECURITY, and : | |
| STEVEN HURD, : | |
|              DEFENDANTS. : | |
| ———————————————— | |

## COMPLAINT AND JURY DEMAND

### Nature of the Case

1. This is an action for declaratory judgment, permanent injunctive relief and damages for injuries to Plaintiff as a result of Defendants' unlawful employment practices in violation of the Family & Medical Leave Act (hereinafter the "FMLA"), the Americans with Disabilities Act (the "ADA",) the Age Discrimination in Employment Act ("ADEA"), and the Massachusetts Fair Employment Practices Act ("M.G.L. c. 151B").

2. The Plaintiff, Ronna Litvak ("Ms. Litvak" or "Plaintiff"), was an employee in good standing with Defendants. After Ms. Litvak notified Defendants that she was diagnosed with lung cancer, took job-protected leave under the FMLA, provided notice of disability and asserted of her legal rights, she suffered harassment, discrimination, denial of reasonable accommodation requests, and retaliation, which culminated in her termination for pretextual reasons. Defendants terminated Ms. Litvak's employment because of her disability and/or

age, despite her rights under the FMLA, the ADA and M.L.G. c. 151B, and/or in retaliation for asserting her rights under those laws. Ms. Litvak suffered damages as a result of Defendants unlawful actions.

## The Parties

3.   Ms. Litvak is seventy-two (72) years old and resides in Stoughton, Norfolk County, Massachusetts. Ms. Litvak suffers from cancer, which rises to the level of a disability and serious medical condition.

4.   ADT LLC d/b/a in Massachusetts as "ADT Security" ("Defendant ADT") has its corporate headquarters located at 1501 Yamato Road, Boca Raton, Florida 33431. It has a listed registered agent of CT Corporation System, Registered Agent for ADT LLC, 55 Federal Street, Suite 700, Boston, Massachusetts 02110.

5.   Upon information and belief, Defendant Steven Hurd is still employed by Defendant ADT as a Regional HR Business Partner and conducts business in Massachusetts. Upon information and belief, Defendant Hurd resides in Hiram, Portage County, Ohio.

6.   Ms. Litvak at all relevant times described in this Complaint was an employee of Defendants within the meaning of the FMLA, the ADA, the ADEA and M.G.L. c. 151B.

7.   Defendant ADT at all times described in this Complaint was Ms. Litvak's employer within the meaning of the FMLA, the ADA, the ADEA and M.G.L. c. 151B.

## Jurisdiction and Venue

8.   Federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331.

9.      Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that Plaintiff resides in this district and Defendant ADT conducts business and has offices in this district.

11.     Plaintiff filed a proper and timely charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD"), which charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

12.     Plaintiff notified the MCAD and the EEOC that she  would be removing her case and filing in federal court. The MCAD issued a dismissal on or about July 7, 2020, and the EEOC issued a dismissal on or about July 31, 2020. Those dismissals are attached hereto as Exhibit A.

13.     All administrative and jurisdictional prerequisites to suit have been satisfied.

**Facts**

MS. LITVAK'S EMPLOYMENT WITH DEFENDANT ADT

14.     Plaintiff has a long history with Defendant ADT starting back in April 1990.

15.     Plaintiff worked for Defendant ADT before it split from Tyco in April 2013.

16.     After a layoff from Tyco, Plaintiff began working with Protection 1 in January 2016.

17.     Plaintiff continued her employment with Defendant ADT when it merged with Protection 1 in May 2016 and hired Plaintiff.

18.     Plaintiff performed her duties in a satisfactory fashion and was at all times an employee in good standing until her termination on February 12, 2019.

## MS. LITVAK FIGHTS STAGE 2B LUNG CANCER.

19.     On November 16, 2017, Plaintiff was diagnosed with Stage 2B Lung Cancer at age 69.

20.     Plaintiff informed Defendant ADT and went out on leave on or about November 15, 2017.

21.     Plaintiff's doctor notified Defendant ADT of the need for surgical treatment by November 10, 2017.

22.     Plaintiff underwent surgical treatment and remained in the hospital until November 29, 2017.

23.     Plaintiff's cancer condition and necessary treatment seriously impacted her ability to breath, eat, sleep, think, concentrate, walk, and work, among other things.

24.     The above conditions and treatments rose to the level of a serious medical condition within the meaning of the FMLA, and a disability/handicap under the state and federal disability laws.

25.     Plaintiff took time for cancer treatments, and recovery which was known to Defendants.

26.     Plaintiff regularly with her Defendants about her conditions, disabilities and need for leave and/or accommodation.

## MS. LITVAK REQUESTED AND UTILIZED APPROVED LEAVE.

27.     Defendant ADT approved Plaintiff's reasonable accommodation requests for leave from November 17, 2017 through November 19, 2018.

28.     It now appears Defendant ADT did not process Plaintiff's November 10, 2017 request for leave of absence until March 30, 2018.

29.     Plaintiff's lung doctor timely completed forms as requested by Defendant ADT agent Aetna.

30.     Plaintiff kept her manager and Defendant ADT human resources contact informed of her condition and progress.

31.     Plaintiff sent an email to Susan Peltier and Ellen Phillips on November 8, 2018 informing them that her doctor was suggesting a return to work date of April 1, 2019.

32.     On December 18, 2018, Doctor Jeffrey Scott completed ADA forms stating Plaintiff was expected to return to work on April 1, 2019 modified duty.

MS. LITVAK'S LTD BENEFITS ENDED AFTER ONLY 12 MONTHS, DUE TO HER AGE.

33.     On November 21, 2018, Plaintiff received notice that her benefits were being cut off on May 21, 2019.

34.     On December 7, 2018, Defendant ADT agent Aetna informed Plaintiff that with regards to her May 22, 2018 through November 19, 2018 request for leave, "Good news your employer approved your reasonable accommodation request."

DEFENDANT STEVEN HURD ASSESSES MS. LITVAK'S REQUEST FOR CONTINUED LEAVE.

35.     Starting in November/December 2018, Defendant ADT's Regional HR Business Partner Steven Hurd ("Defendant Hurd") called Plaintiff under the auspices of seeing how her health was progressing.

36.     Plaintiff reported that she was building up her strength and ability to breath.

37.   Defendant Hurd said that he was trying to reevaluate if Plaintiff needed accommodations under the ADA. He said something to the effect that Plaintiff "sounded good" to him.

38.   Defendant Hurd instructed Plaintiff to call Defendant ADT agent Aetna and ask for the ADA department to request the forms to apply for ADA.

39.   Defendant Hurd informed Plaintiff that he needed more information and would contact Plaintiff's doctor.

40.   Defendants never informed Plaintiff whether her doctor responded or failed to respond.

41.   Plaintiff remained on leave.

MS. LITVAK IS DUMPED FROM DEFENDANT ADT BENEFITS AS OF JANUARY 1, 2019 – BEFORE HER TERMINATION.

42.   Plaintiff received a Termination of Benefits Cover Letter and COBRA benefits notice dated December 10, 2018.

43.   Defendants told Plaintiff that since she was out of work more nine consecutive months, she had been placed on COBRA since January 1, 2019.

44.   Plaintiff was told she needed to send Defendant ADT a check 102% of cost. Plaintiff sent in the check. On or about January 17, 2019, Plaintiff completed her vision and dental forms with Defendant ADT.

MR. HURD TERMINATES MS. LITVAK'S EMPLOYMENT OVER THE PHONE AND WITHOUT WARNING OR JUSTIFICATION.

45.   On February 12, 2019, Defendant Hurd called Plaintiff on the phone and terminated her employment and stated he would be sending her a termination letter.

46. Defendant Hurd alleged that given the most recent medical information that was provided to the company, Plaintiff no longer qualified to be on leave of absence accommodation.

47. Defendant Hurd also sent a letter of termination to Plaintiff dated February 12, 2019.

48. Plaintiff had not had any medical updates since she last saw her doctor about November 18, 2018.

49. Plaintiff's ADA leave request had been approved based on that medical documentation, so it would not have supported denial of her request.

50. Soon after February 12, 2019, Plaintiff called Defendant Hurd to clear up this inconsistency, but he refused to provide any information.

51. When Plaintiff asked Defendant Hurd what information he based her termination upon and asked for copies of the information, Defendant Hurd refused to provide information and directed her to seek that information from Defendant ADT agent Aetna.

52. Plaintiff confirmed with her doctor and Defendant ADT agent Aetna that the last medical record received had been the one on November 18, 2018.

53. On March 12, 2019, Defendant Hurd responded to Plaintiff's request for 1) her personnel file and 2) a copy of the medical documentation upon which Defendant Hurd made the determination that Plaintiff was not eligible for ADA leave and should be terminated.

54.     Defendant Hurd again refused to provide the information he claimed to use to justify her termination to her and directed her to contact Aetna directly for that information.

55.     When Plaintiff again contacted Aetna, Aetna confirmed there had been no new information.

56.     The employer left Plaintiff on leave until her return to work approached. At that point, Defendant ADT terminated Plaintiff's employment without justification.

57.     Although Plaintiff was scheduled to return to work April 1, 2019 and was on approved leave, Defendant Hurd sent her a letter stating she was immediately terminated because she was not approved for leave.

58.     Defendant ADT did not even give Plaintiff a chance to return to immediately return to work.

59.     Defendants did not notify Plaintiff of the problem or give her a chance to rectify the issue.

60.     Defendants failed to engage in the interactive dialogue in good faith Plaintiff.

<u>DEFENDANT ADT'S AGENT AETNA DEEMS MS. LITVAK DISABILIED.</u>

61.     Defendant ADT agent Aetna sent Plaintiff a letter dated March 1, 2019 stating it had closed her request for ADA accommodation.

62.     The letter did not explain the basis for the denial or termination.

63.     While the letter suggested possible steps for Plaintiff to take to preserve her employment, Plaintiff was already terminated by Defendant Hurd.

64.     On March 4, 2019, an Aetna Vocational Rehabilitation Consultant for the Aetna Life Insurance Disability Program sent Plaintiff a letter offering her services.

65.    The letter further stated that the Massachusetts Rehabilitation Commission is

       often utilized by *disabled* individuals in Plaintiff's area (emphasis added).

## DEFENDANT ADT'S HISTORY OF TREATMENT OF OLDER AND/OR DISABLED WORKERS IMPLIES A PATTERN AND PRACTICE OF DISCRIMINATION.

66.    Defendant ADT has long engaged in a pattern and practice of age and disability

       discrimination that further contributed to the actions taken against Plaintiff.

67.    Other workers have also been subject to this unlawful practice of mistreatment

       and disrespect of older and disabled workers, including forcing out and/or

       terminating older workers to replace them with younger, less qualified non-

       disabled individuals.

## THE DEFENDANTS' MOTIVATION

68.    Defendants took the above actions against Plaintiff for unlawful reasons.

69.    The ostensible reason for the Plaintiff's dismissal was pretextual.

70.    The Defendants' conduct, as more particularly set forth above, was willful and

       knowing.

71.    The Defendants' conduct, as more particularly set forth above, was intended to

       and did harm the Plaintiff.

72.    The Defendants' conduct, as more particularly set forth above, has caused the

       Plaintiff to suffer emotional distress, and continues to do so.

73.    The Defendants' conduct, as more particularly set forth above, was made with the

       knowledge and intent to violate state and federal law.

74.    The Defendants' conduct, as more particularly set forth above, was carried out

       with malice.

75.     The Defendants' conduct, as more particularly set forth above, was outrageous and egregious, and warrants condemnation and deterrence.

**COUNT I: Retaliation for Use of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* Against Defendant ADT**

76.     Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 75 and incorporates them by reference herein.

77.     Defendant ADT was aware of Plaintiff's protected activities of requesting and taking FMLA leave.

78.     By dismissing her from Defendant ADT's employ, and in divers other ways as more particularly described above, Defendant ADT retaliated against Plaintiff for exercising her rights under the FMLA.

79.     Retaliation for the exercise of rights protected by the FMLA is a violation of law. 29 U.S.C. § 2615(a).

80.     Plaintiff suffered damages as a result of this unlawful conduct.

81.     Defendant ADT's conduct in retaliating against the Plaintiff for the exercise of her rights under FMLA was willful and intentional.

82.     Defendant ADT is liable to the Plaintiff for violating her rights under the FMLA, 29 U.S.C.§ 2612.

**COUNT II: Violation of Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*: Failure to Accommodate Against Defendant ADT**

83.     Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 82 and incorporates them by reference herein.

84.     Plaintiff was, at all times, a qualified individual with a disability who was able to perform the essential functions of her position with or without accommodation.

85.  Plaintiff suffered from cancer. This impairment and necessary treatment at times necessitated absences from work, required ongoing medical treatment and substantially impaired her ability to breath, eat, sleep, eat, think, concentrate, walk and/or work, (among other major life activities).

86.  Plaintiff's condition constituted a disability under the ADA, as amended, 42 U.S.C. § 12111, *et seq.*

87.  Defendant ADT had notice of Plaintiff's impairment and need for accommodation.

88.  In the alternative, Defendant regarded the Plaintiff as having a disability, and discriminated against her on account of its perception that the Plaintiff's condition constituted a disability as defined by the ADA, as amended.

89.  On multiple occasions, Plaintiff made requests for reasonable accommodation. By terminating her employment, Defendant ADT refused and effectively failed to provide Plaintiff with this reasonable accommodation.

90.  By terminating her employment without providing Plaintiff an opportunity to cure the alleged defects in her doctor's forms or to immediately return to work, Defendant ADT refused and effectively failed to provide Plaintiff with a reasonable accommodation

91.  These accommodations were reasonable and would not have caused Defendant ADT's undue hardship.

92.  Further, Defendant ADT failed to engage with Plaintiff in an interactive dialogue in good faith.

93.     Defendant ADT had a duty to provide Plaintiff with reasonable accommodations that did not impose an undue hardship.

94.     Defendant ADT had a duty not to discriminate against Plaintiff.

95.     Notwithstanding its duty, Defendant ADT discriminated against Plaintiff on account of her disability by denying her request for leave and terminating her employment before she could return to work, as more particularly described above.

96.     Defendant ADT violated 42 U.S.C. §12112, by refusing to accommodate Plaintiff and by discriminating against her, as more particularly set forth above.

97.     Defendant ADT knew, or should have known, that its conduct violated 42 U.S.C. §12101, et seq.

98.     The Plaintiff has suffered damages as a result of Defendant ADT's violations of law set forth above.

99.     Defendant ADT is liable for the violations of law set forth above.

**COUNT III: Violation of Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*: Retaliation Against Defendant ADT**

100.    Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 99 and incorporates them by reference herein.

101.    As noted above, Defendant had notice of the Plaintiff's protected activities and was motivated by Plaintiff's protected activities in terminating her employment.

102.    Defendant ADT had a duty to refrain from retaliating against the Plaintiff on account of her protected activities.

103.    Defendant ADT's violations of law caused Plaintiff damages.

104.    Defendant ADT is liable to Plaintiff for the violations of law set forth above.

105. Defendant ADT's acts of retaliation against the Plaintiff, as more particularly described above, were made with malice or with reckless indifference to Ms. Litvak's federally protected rights.

**COUNT IV: Violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq. – Interference and Disparate Treatment Against Defendant ADT**

106. Plaintiff hereby restates and incorporates paragraphs 1 through 105 of this Complaint as if fully stated herein.

107. At the time of her termination, Plaintiff was seventy (70) years old and had performed her job in at an acceptable level.

108. By treating Plaintiff and those similarly situated differently based on their ages, Defendant ADT has knowingly interfered with their right to be free from discrimination in the terms, conditions, and privileges of employment.

109. As an employee of Defendant ADT, Plaintiff had the right to a fair determination of her status without any discriminatory animus.

110. Through the actions outlined above, Defendant ADT intentionally interfered with the employment rights of Plaintiff and those similarly situated, and they were not free from discrimination as the law requires.

111. As such, the actions of the Defendant resulted in violations of the ADEA and/or other applicable employment-related laws and/or regulations under a theory of unlawful interference as applied through disparate treatment.

112. As a result of Defendant's actions, Plaintiff and others similarly situated have suffered damages.

**COUNT V: Violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq. – Retaliation Defendant ADT**

113.   Plaintiff hereby restates and incorporates paragraphs 1 through 112 of this Complaint as if fully stated herein.

114.   At the time of her termination, Plaintiff was seventy (70) years old and had performed her job in at an acceptable level.

115.   As noted above, Defendant had notice of the Plaintiff's protected activities under the ADEA and was motivated by Plaintiff's these protected activities in terminating her employment.

116.   Defendant ADT had a duty to refrain from retaliating against the Plaintiff on account of her protected activities.

117.   Defendant ADT's violations of law caused Plaintiff damages.

118.   Defendant ADT is liable to Plaintiff for the violations of the ADEA set forth above.

119.   Defendant ADT's acts of retaliation against the Plaintiff, as more particularly described above, were made with malice or with reckless indifference to Ms. Litvak's federally protected rights.

### COUNT VI: Violation of Mass. Gen. Laws c. 151B, § 4(1B), Age Discrimination Against Defendant ADT

120.   Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 119 and incorporates them by reference herein.

121.   At the time of her termination, Plaintiff was seventy (70) years old and had performed her job in at an acceptable level.

122.   Defendant terminated Plaintiff's employment and sought to fill her position.

123. By treating Plaintiff differently than the younger employees as outline above, and by terminating Plaintiff based on her age, Defendant ADT has treated Plaintiff differently based on her age, thereby discriminating against her.

124. Defendant ADT has discriminated against Plaintiff, and those similarly situated, based upon age. Defendant's actions have unreasonably interfered with Plaintiff's ability to perform her job and ultimately resulted in her inexcusable termination.

125. As such, the actions of the Defendant resulted in violations of M.G.L. c. 151B and/or other applicable employment-related laws and/or regulations under a theory of disparate treatment.

126. As a result of Defendant ADT's actions, Plaintiff and others similarly situated have suffered damages.

### COUNT VII: Violation of Mass. Gen. Laws c. 151B, § 4(16), Handicap Discrimination Against Defendant ADT

127. Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 126 and incorporates them by reference herein.

128. Plaintiff was, at all relevant times, a qualified individual with a handicap who was able to perform the essential functions of her position with or without accommodation.

129. Plaintiff's condition(s) constituted a handicap(s) under M.G.L. c. 151B, § 4(16), which was known to Defendant ADT.

130. Defendant ADT discriminated against the Plaintiff on account of her handicap by dismissing the Plaintiff from its employ, and in divers other ways, as more particularly described above.

131.    Defendant ADT's harassment and dismissal of Plaintiff were motivated by her disability.

132.    In the alternative, Defendants regarded the Plaintiff as having a handicap or impairment as defined by M.G.L. c. 151B, § 1(17), and discriminated against her on the basis of that perception.

133.    Defendant ADT had a duty to refrain from discriminating against the Plaintiff on account of her handicap or on account of a perceived handicap.

134.    Defendant ADT had a duty to provide Plaintiff with reasonable accommodations that did not impose an undue hardship.

135.    On multiple occasions, Plaintiff made requests for continued leave as a reasonable accommodation for her cancer condition.

136.    These accommodations were reasonable and would not have caused Defendant ADT undue hardship.

137.    Further, Defendant ADT failed to engage with Plaintiff in an interactive dialogue in good faith.

138.    The Plaintiff has suffered damages from the violations of law set forth above.

139.    Defendant ADT is liable to Plaintiff for the violations of law set forth above.

140.    Defendant ADT's acts of discrimination against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

## COUNT VIII: Violation of Mass. Gen. Laws c. 151B, § 4(4), Retaliation Against All Defendants

141.    Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 140 and incorporates them by reference herein.

142.    As outlined above, the Defendants retaliated and discriminated against Plaintiff because she opposed the Defendants' violation(s) of her rights under M.G.L. c. 151B, § 4.

143.    The Plaintiff has suffered damages from the violations of law set forth above.

144.    The Defendants are liable to Plaintiff for the violations of law set forth above.

145.    The Defendants' acts of discrimination against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

## COUNT IX: Violation of Mass. Gen. Laws c. 151B, §4(4A), Coercion, Intimidation, Interference and Threats Against Defendant Hurd

146.    Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 145 and incorporates them by reference herein.

147.    As outlined above, Defendant Hurd coerced, intimidated, and threatened Plaintiff for, and interfered with Plaintiff's exercise and enjoyment of her rights to a reasonable accommodation and to be free from discrimination and retaliation.

148.    The Plaintiff has suffered damages from the violations of law set forth above.

149.    Defendant Hurd is liable to Plaintiff for the violations of law set forth above.

150.    Defendant Hurd's acts of discrimination against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

## COUNT X: Violation of Mass. Gen. Laws c. 151B, § 4(5), Aiding and Abetting Against Defendant Hurd

151.    Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 150 and incorporates them by reference herein.

152.    As outlined above, Defendant Hurd aided, abetted, incited, compelled, or coerced the doing of acts forbidden under M.G.L. c. 151B.

153.    The Plaintiff has suffered damages from the violations of law set forth above.

154.   Defendant Hurd is liable to Plaintiff for the violations of law set forth above.

155.   Defendant Hurd's acts of discrimination against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

WHEREFOR, Plaintiff prays the court to:

   a.   Adjudge Defendant ADT liable for the violations of law set forth in Count I.

   b.   Adjudge Defendant ADT liable for the violations of law set forth in Count II.

   c.   Adjudge Defendant ADT liable for the violations of law set forth in Count III.

   d.   Adjudge the Defendant ADT liable for the violations of law set forth in Count IV.

   e.   Adjudge the Defendant ADT liable for the violations of law set forth in Count V.

   f.   Adjudge Defendant ADT liable for the violations of law set forth in Count VI.

   g.   Adjudge Defendant ADT liable for the violations of law set forth in Count VII.

   h.   Adjudge all defendants liable for the violations of law set forth in Count VIII.

   i.   Adjudge Defendant Hurd liable for the violations of law set forth in Count IX.

   j.   Adjudge Defendant Hurd liable for the violations of law set forth in Count X.

   k.   Award the Plaintiff lost wages, benefits, and other economic losses according to law.

   l.   Award the Plaintiff damages for emotional pain and suffering according to law.

   m.   Award the Plaintiff liquidated damages, as provided by law.

   n.   Award the Plaintiff punitive damages, as provided by law.

   o.   Award the Plaintiff pre- and post-judgement interest, according to law.

   p.   Award the Plaintiff her costs and reasonable attorneys' fees, as provided by law.

q.   Grant the Plaintiff such additional relief, including equitable relief, as the court

deems reasonable and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on her claims.

Respectfully submitted,
RONNA LITVAK,
By her attorney,

Dated: October 4, 2020

/s/ Melissa A. Pomfred
Melissa Pomfred (BBO# 665682)
melissa@pomfredlaw.com
Pomfred Law Offices, PLLC
5 East Street
Franklin, MA 02038
P: (508) 321-7859
F: (508) 321-9333
